UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MERIAL LIMITED,<br><br>    Defendant. | Civil Action 08-02162 (HHK) |

**MEMORANDUM OPINION**

  Intervet, Inc. ("Intervet") brings this action against Merial Limited ("Merial"), seeking a declaratory judgment of patent noninfringement and invalidity. Specifically, Intervet seeks a declaration that its vaccine against porcine circovirus does not infringe on any claim of Merial's U.S. Patent No. 6,224,882 ("'882 Patent"). Merial has brought a parallel action in the U.S. District Court for the Middle District of Georgia alleging that Intervet's vaccine infringes the '882 Patent. Before the Court is Merial's motion to dismiss Intervet's complaint, pursuant to the first-to-file rule, in favor of the Georgia action [#9]. In the alternative, Merial seeks to have this case transferred to the Middle District of Georgia or, if the Court retains it, a dismissal of the second count of the complaint. Upon consideration of this motion, the opposition thereto, and the record of this case, the Court concludes that the motion to dismiss the complaint should be granted.

# I. BACKGROUND

## A.  Litigation Between Intervet and Merial in this Court

Merial and Intervet are opposing parties in two other actions before this Court.  In case No. 06-00658, Intervet sought a declaratory judgment that its vaccine does not infringe on any claim of Merial's U.S. Patent No. 6,368,601 ("'601 Patent") and that the '601 Patent is invalid and unenforceable.  The '601 Patent, titled "Porcine Circovirus Vaccine and Diagnostics Reagents," identified five new porcine circoviruses (PCVs), which the inventors believed were responsible for a disease in young pigs.  After a *Markman* hearing, the Court construed six terms included in the claims of the '601 Patent: "PCV-2," "PCV-1," "ORFs 1-13," "vector," "epitope," and "an isolated DNA molecule comprising a nucleotide sequence encoding an epitope which is specific to PCV-2 and not specific to PCV-1." *Intervet, Inc. v. Merial Ltd.*, 2007 WL 5685349, at *2-12 (D.D.C. Nov. 28, 2007).  On August 12, 2009, the Court granted summary judgment in favor of Intervet with respect to infringement. *Intervet, Inc. v. Merial Ltd.*, — F. Supp. 2d —, 2009 WL 2481977, at *1 (D.D.C. Aug. 12, 2009).  The Court concluded, based on its claim constructions, that Intervet's vaccine does not literally infringe upon claims 9, 15, or 16 of the '601 Patent because the isolate of porcine circovirus Intervet used in its vaccine was not one of the strains included in the meaning of "PCV-2." *Id.* at *3-5.  The Court also concluded that Intervet's vaccine does not literally infringe upon claims 32, 33, or 35 of the '601 Patent because Merial had not shown that the vaccine included "at least one DNA sequence encoding an epitope that is *found only* on one of the five 'PCV-2' strains." *Id.* at *5-6.  Finally, the Court ruled that Merial could not invoke the doctrine of equivalents to expand the patent's claims beyond their

literal terms; the Court's reasoning focused primarily on amendments Merial had made to certain claims during the patent prosecution proceedings that narrowed their meaning. *Id.* at *6-13.

In the second case, No. 07-00559, Intervet seeks a declaratory judgment that its vaccine does not infringe on Merial's U.S. Patent No. 7,192,594 ("'594 Patent") and that the '594 Patent is invalid. The '594 Patent, titled "Postweaning Multisystemic Wasting Syndrome and Porcine Circovirus from Pigs," includes claims with at least two terms that appear in the '601 Patent claims: "porcine circovirus Type II (PCVII)" and "ORF 6." This case has not progressed passed preliminary, nonsubstantive proceedings.

**B. The '882 Patent**

The developer of the '882 Patent assigned the patent to Merial. The patent is titled "Insect Cells or Fractions as Adjuvant for Antigens." It claims an adjuvant composed of insect cells, or fractions of insect cells, as well as methods of preparing and using the adjuvant. In other words, the patent relates to the use of insect cells to improve the immune response a vaccine generates. The '882 Patent is the subject of several actions pending in United States District Courts.

On December 8, 2008, Merial filed suit against Boehringer Ingelheim Vetmedica B.V. ("BIV") in the United States District Court for the Middle District of Georgia. In that action, No. 08-00116 ("BIV action"), Merial alleges that several of BIV's veterinary vaccines infringe on one or more claims of the '882 Patent.[1]

---

[1] In addition, on February 4, 2009, the same day Merial filed its motion to dismiss in this Court, BIV filed an action in the District Court for the District of Connecticut, No. 09-00212, seeking a declaration of noninfringement and invalidity of the '882 Patent.

On December 10, 2008, Merial filed an action against Intervet, also in the Middle District of Georgia. In that case, No. 08-00121 ("Georgia action"), Merial alleged that the production and sale of Intervet's vaccine infringes one or more claims of the '882 patent. It is this suit that Merial believes should proceed, to the exclusion of the present action, pursuant to the first-to-file rule.

Intervet filed this case on December 11, 2008, one day after Merial filed the Georgia action, seeking a declaration that its vaccine does not infringe on any claims of the '882 Patent and that the patent is invalid.

## II. ANALYSIS

Merial requests first that the Court dismiss Intervet's complaint, arguing that the first-to-file rule should apply and thus only the Georgia action should proceed. In the alternative, Merial seeks a transfer to the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a). Finally, Merial argues that if the Court retains this case, it should dismiss the second count of Intervet's complaint for failure to state a claim upon which relief can be granted. Based on the first-to-file rule and equitable principles, the Court dismisses Intervet's complaint. Because that issue is dispositive of the case, the Court will not address Merial's alternative motions.

Merial argues that Intervet's complaint should be dismissed pursuant to the first-to-file rule. "The first-to-file rule dictates that when two actions involving the same subject matter are pending, the first-filed action should proceed to the exclusion of the later-filed action." *Intervet, Inc. v. Merial Ltd*, 535 F. Supp. 2d 112, 114 (D.D.C. 2008) (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds*, *Wilton v. Seven Falls Co.*,

515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).[2]  Merial reasons that because the parties and subject matter of the Georgia action and this case are the same, and because Merial filed in Georgia before Intervet filed in this Court, the first-to-file rule should apply here.

"[P]recedent . . . favors the first-to-file rule" only "in the absence of circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to judgment." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005); *see also Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) ("The first-filed suit rule . . . will not always yield the most convenient and suitable forum.  Therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of the competing forums.").  Courts are to favor the "conservation of judicial resources and the comprehensive disposition of litigation" over mechanical application of the first-to-file rule. *Genentech*, 998 F.2d at 938 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 92 USCPQ 1, 2 (1952)).  Equitable considerations may include "the convenience and availability of the witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* (citing *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081-83, 12 USPQ2d 1997, 1999-2001 (Fed. Cir. 1989)).

---

[2]  Because this case involves claims of patent infringement, Federal Circuit law governs, even in resolving disputes about proper jurisdiction. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005) ("The question whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts this court's mandate to promote national uniformity in patent practice.  Because it is an issue that falls within our exclusive subject matter jurisdiction, we do not defer to the procedural rules of the regional circuits nor are we bound by their decisions." (citing *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995); *Genentech*, 998 F.2d at 937)).

Merial argues that none of these factors favor retaining this action in the District of Columbia, reasoning that similarities between the case before this Court and Merial's action against BIV in the Middle District of Georgia make that District the preferable forum. Specifically, Merial notes that the BIV case, which is before the same judge as the Georgia action, involves the '882 Patent, so the issues and evidence relevant to the BIV litigation will also be pertinent to resolving Merial's dispute with Intervet regarding the '882 Patent.[3]

In opposition, Intervet contends that equitable factors favor retaining this action in the District of Columbia. Intervet asserts that proceeding in this District would best conserve judicial resources, reasoning that this Court is already familiar with related facts and issues because the cases regarding the '601 and '594 Patents have been pending before it. Intervet also emphasizes the significant discovery that has occurred in the '601 Patent case, arguing that deposition testimony and documents regarding Intervet's vaccine are relevant to the disposition of this '882 Patent action.

---

[3] Intervet responds that the BIV litigation is unlikely to remain in the Middle District of Georgia but, because of a licensing agreement between the developer of the '882 Patent and BIV, should instead proceed in Connecticut. Merial disputes Intervet's reasoning regarding the significance of the agreement. This Court need not resolve this issue. It is for the Georgia court to determine which cases before it to dismiss, transfer, or retain; this Court can only note that another action pertaining to the '882 Patent is currently pending in the forum of the first-filed case in the present matter.

The Court agrees with Merial. Merial's suit is first-filed,[4] so the presumptive course of action is dismissal of Intervet's action. Insofar as equitable considerations dictate which forum is preferable, they favor proceeding in the Middle District of Georgia. The BIV action concerns the same patent at issue in the Georgia action and in this case, and it raises the related question of whether particular vaccines infringe that patent. For purposes of efficiency, a single court should oversee discovery relevant to the '882 Patent. Furthermore, a single court should hold a *Markman* hearing and construe the claims of the '882 Patent. Going forward with this case while the BIV action proceeded elsewhere "could lead to conflicting claim constructions, with

---

[4] That Merial filed the Georgia action only one day before Intervet filed this case is of no consequence. *See Genentech*, 998 F.2d at 938 ("[T]he rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by '[reasons] just as valid when applied to the situation where one suit prcedes the other by a day as they are in a case where a year intervenes between the suits.'" (quoting *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 205 (7th Cir. 1959)) (second alteration in original)).

Intervet argues that this Court should treat the cases regarding the '601 and '594 Patents, rather than the Georgia action, as the first-filed cases. Intervet cites two cases, *Aventis Pharmaceuticals Inc. v. Teva Pharmaceuticals USC Inc.*, 2007 U.S. Dist. LEXIS 72239 (E.D. Tex. Sept. 27, 2007), and *Amberwave System Corp. v. Intel Corp.*, 2005 U.S. Dist. LEXIS 30010 (E.D. Tex. Nov. 1, 2005), to support its contention that cases need not involve the same patent to be appropriately considered in a first-to-file analysis. But opinions of the Federal Circuit addressing the first-to-file rule in patent cases assume that the rule might apply under specific circumstances: when one action alleging patent infringement and another seeking a declaration of noninfringement of the same patent are pending. *See, e.g., Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) ("The question whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts this court's mandate to promote national uniformity in patent practice."); *accord Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp.*, 2006 WL 1749399, at *4 (D.Del. June 21, 2006) (determining that the Federal Circuit's application of the first-to-file rule "seems limited to actions 'involving the same patents'" (quoting *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1328 (Fed. Cir. 2004))). Even if in some situations the first-to-file rule might apply to actions involving different patents, the cases regarding porcine circovirus patents and the current action pertain to sufficiently distinct controversies that the Court will not consider the '601 and '594 Patent cases to be first-filed in relation to this case.

deleterious impact on fairness and judicial economy." *Global Innovation Tech. Holdings, LLC v. Acer Am. Corp.*, 2009 WL 1743614, at *2 (S.D. Fla. June 18, 2009); *see also Interactive Music Tech., LLC v. Roland Corp. U.S.*, 2008 WL 245142, at *11 (E.D. Tex. Jan. 29, 2008) (stating that "litigating the same patent simultaneously in separate venues" is "untenable" because it "would be inefficient in conserving judicial efficiency, and bears potential for confusion on appeal, as it would lead to competing claim constructions on the same terms in the same patent"); *Multi-Tech Systems, Inc. v. Net2Phone, Inc.*, 2000 WL 34494824, at *8 (D. Minn. June 26, 2000) (retaining a case involving patents at issue in other cases before the court because "resolving the claims pertaining to the same patents in this forum will eliminate duplicative discovery as well as the possibility of conflicting claim constructions").

  Intervet's arguments are unconvincing. Although this Court has devoted considerable resources to reviewing the claims of the '601 Patent, the questions that will arise in this '882 Patent action are unrelated to the ones resolved in the '601 Patent case. The two patents are distinct. The '601 Patent identifies five specific porcine circovirus strains. The '882 Patent relates to the use of insect cells, or fractions of insect cells, to improve the immune response of a vaccine. Therefore, although the product in question, Intervet's vaccine, is the same, the potential infringement of each patent relates to different aspects of the functioning of the product. Of the six terms this Court construed after the *Markman* hearing in the '601 Patent case, only one—"epitope"—appears in the claims of the '882 Patent. "Epitope" is a generic term for an immunodominant region of a protein. The Court's construction consisted only of rejecting an argument that the term had a significance distinct from its ordinary and customary meaning in the context of the claims of the '601 Patent. *Intervet*, 2007 WL 5685349, at *9. In ruling on

Intervet's motion for summary judgment of noninfringement of the '601 Patent, the Court considered the significance of the distinctions between the porcine circovirus strain in Intervet's vaccine and the PCV-2 strains, *Intervet*, 2009 WL 2481977, at *3-6; the Court did not review any other questions about the production or functioning of the vaccine.  Therefore, nothing this court considered or decided regarding the '601 Patent would be relevant to resolving the questions that will be raised in this case.

Both parties make arguments regarding the convenience of the witnesses.  Because it does not appear that any likely witnesses reside within the Middle District of Georgia or the District of Columbia, the Court does not give significant weight to this factor.  Furthermore, as Merial notes, the convenience of the witnesses is best served by ensuring that both actions pertaining to the '882 Patent proceed in a single forum.

Because the Court dismisses Intervet's complaint, Merial's alternative requests for transfer and for dismissal of Intervet's second count are moot.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Merial's motion to dismiss [#9] should be granted.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge